THOMAS S. WILLETS ET AL. *v.* EMHART
MANUFACTURING COMPANY

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, Js.

Argued January 6—decided March 10, 1965

*Charles J. Cole,* with whom was *Thomas C. White,*
for the appellant (defendant).

*J. Read Murphy,* with whom were *John E. Silliman* and, on the brief, *James P. Sandler,* for the appellees (plaintiffs).

COMLEY, J. This is an appeal by the defendant from a judgment of the Court of Common Pleas accepting the report of a state referee in which subordinate facts were found and in which the conclusion was reached that the plaintiffs were entitled to receive separation pay upon the termination of their employment by the defendant.

The facts may be summarized as follows: In May, 1960, the plaintiffs were employed by the defendant in its Maxim division. Each was entitled, as part of his contract of employment, to benefits under a separation pay agreement contained in personnel policy No. 1.4 issued by the defendants on April 23, 1958. The agreement provided that separation pay should be granted to eligible employees according to a schedule based on length of service when laid off (1) for lack of work or (2) because of reorganization. It further provided that the employee should be eligible to receive the pay if: (1) the layoff was for an indefinite period; (2) the employee did not voluntarily terminate his employment; (3) the employee was not discharged for cause.

On May 31, 1960, the defendant sold its Maxim division to American Machine and Foundry Company, hereinafter referred to as A.M.F. The sale had been the subject of discussion during April and May, and the plaintiffs had been informed that A.M.F. would have first call upon the services of the defendant's employees. They also learned that those who transferred to A.M.F. would not receive separation pay. The defendant did not offer employment to those who elected not to go with A.M.F.,

and it discontinued entirely the types of work for which the plaintiffs were qualified by skill and training. The plaintiffs, being the ones who elected to go with A.M.F., suffered no loss of time or compensation. Some were glad to make the change and were not inconvenienced by it. Others who were required to move from Connecticut to Louisiana accepted the change unwillingly and only because otherwise they would be out of a job. All of them lost their seniority rights with the defendant.

The underlying and determining question is whether these plaintiffs were laid off by the defendant for lack of work. If they were not laid off, or if the layoff was not due to lack of work, they cannot qualify for separation pay under the terms of the agreement.

There can be no question that the sale of its Maxim division by the defendant involved a permanent release of the plaintiffs. By that sale, the defendant made certain that it could no longer fulfil its part of the employment relationship. *Matthews* v. *Minnesota Tribune Co.*, 215 Minn. 369, 373, 10 N.W.2d 230. The defendant argues that this release is not a layoff because it is permanent and not temporary in duration. Webster's Third International Dictionary gives as one of the definitions of the verb "to lay off": "to cease to employ (a worker) . . . [usually] temporarily because of slack in production and without prejudice to the worker." That a layoff may usually be temporary does not require that it must be. See *International Assn. of Machinists* v. *State ex rel. Watson,* 153 Fla. 672, 681, 15 So. 2d 485.

As the state referee cogently pointed out, the defendant itself has given the contract a construction which is inconsistent with its present position,

since in the case of five employees who are not plaintiffs, who did not transfer to A.M.F., who refused positions offered by the defendant and who took positions with other employers, the defendant made separation payments. Those layoffs were not temporary. They are as permanent, so far as the defendant is concerned, as the layoffs experienced by the plaintiffs. It may be that, at the time of the contract, the parties did not contemplate the situation which was created by the sale of the Maxim division and the complete withdrawal by the defendant from the type of work done by that division. We cannot indulge in speculation concerning their state of mind. We are controlled by the intention which they expressed in the language which they used. *Ginsberg* v. *Mascia,* 149 Conn. 502, 506, 182 A.2d 4; *Gilden* v. *Singer Mfg. Co.,* 145 Conn. 117, 119, 139 A.2d 611.

The defendant makes much of the fact that the plaintiffs have suffered little, if any, immediate economic loss. It argues that the principal difference is not in the work or pay of the plaintiffs but in the ownership of the employer's business. This argument involves the proposition that events occurring subsequent to the layoff are the important factors in the determination whether the plaintiffs are entitled to separation pay. This is not true. As was pointed out in *Adams* v. *Jersey Central Power & Light Co.,* 36 N.J. Super. 53, 71, 114 A.2d 776, aff'd, 21 N.J. 8, 120 A.2d 737, unemployment is not a prerequisite to the right to separation pay which may, and frequently does, exist where there is no interruption whatever in the continuity of employment. Separation pay is not analogous to, nor is it a form of, unemployment compensation. Rather, it is a kind of accumulated compensation for past

services and a material recognition of their past value. *Owens* v. *Press Publishing Co.*, 20 N.J. 537, 546, 120 A.2d 442. It concerns the past, not the future, and once it is earned, it becomes payable no matter what may thereafter happen. For various applications of this rule, see the cases set forth in the annotations in 147 A.L.R. 151 and 40 A.L.R.2d 1044.

There is no merit to the claim that the termination of the plaintiffs' employment by the defendant was voluntary on their part. It is true that the acceptance by the plaintiffs of new positions with A.M.F. was voluntary. We are not concerned with the new jobs but, rather, with the old ones. That termination was entirely involuntary on the part of the plaintiffs. The defendant sold its business, or that part of it in which the plaintiffs were engaged, and by its voluntary act made it wholly impossible for the plaintiffs to continue that employment.

There is no error.

In this opinion the other judges concurred.