ANGELINA MACE ET AL. *v.* THE CONDE NAST PUBLICATIONS, INC.

ALCORN, HOUSE, THIM, RYAN and COVELLO, Js.

Argued November 10—decided December 19, 1967

*Morgan P. Ames,* for the appellant (defendant).

*Donald F. Zezima,* with whom, on the brief, were *John C. Macrides* and *Gerald J. Sullivan,* for the appellees (plaintiffs).

ALCORN, J.  Twenty former employees of the defendant and the executrix of a deceased former employee brought this action seeking to recover, under their employment contract with the defendant, severance pay with interest, which they claimed was due them and unpaid since the termination of their employment on April 1, 1961.  The defendant's answer admitted only that the plaintiffs were employees to and including March 31, 1961.  In addition, the defendant pleaded six special defenses, alleging, severally, an accord and satisfaction, a novation, waiver, estoppel, laches, and the Statute of Limitations. The trial court sustained a demurrer to the defense of the Statute of Limitations, and the case was tried to a jury, which returned a verdict for the plaintiffs.  The defendant's motion to set aside the verdict was denied.  The defendant has appealed from the judgment on the verdict, assigning error in the ruling on the demurrer, in the court's refusal to set aside the verdict, and in the charge.  None of the issues raised by the special defenses of accord and satisfaction, waiver, estoppel, and laches is involved in the appeal.

We consider first the error assigned in the ruling on the demurrer. The material allegations of the complaint, which is dated January 6, 1965, are that the plaintiffs were employees of the defendant for some time prior to March 31, 1961; that before that date the defendant had contracted to pay them severance pay, graduated according to the length of employment, whenever the employment of any of them was terminated because of suspension or merger of business or permanent reduction of staff; that they had continued to work for the defendant in reliance on this agreement; and that the defendant had terminated their employment for the stated reasons on March 31, 1961.

The defendant pleaded, in its sixth special defense, that the action was barred by General Statutes § 52-596, which provides that "[n]o action for the payment of remuneration for employment payable periodically shall be brought but within two years after the right of action accrues." The plaintiffs demurred on the ground that the statute was inapplicable because they sought "lump sum severance payments and not weekly or monthly wages." The court ruled that the demurrer was "[s]ustained for the reason that § 52-596 does not apply."

The ruling was correct. We have described severance pay as "a kind of accumulated compensation for past services and a material recognition of their past value"; *Willets* v. *Emhart Mfg. Co.*, 152 Conn. 487, 490, 208 A.2d 546; or as "a form of compensation for the termination of the employment relation, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also recompense him for certain losses attributable to the dismissal." *Adams* v. *Jersey Central Power &*

*Light Co.,* 21 N.J. 8, 13, 120 A.2d 737; *McGowan* v. *Administrator,* 153 Conn. 691, 693, 220 A.2d 284; see also *Brannigan* v. *Administrator,* 139 Conn. 572, 577, 95 A.2d 798. Under neither description would severance pay amount to "the payment of remuneration for employment payable periodically."

The errors assigned in the charge are tested by the claims of proof in the finding. *State* v. *Mallette,* 153 Conn. 584, 587, 219 A.2d 447. The issues between the parties as disclosed by the finding were as follows: The defendant had conducted the "Vogue Pattern Service" since 1934, and the plaintiffs had been permanent employees in this department of the defendant's business. The defendant had issued to each employee a handbook containing provisions for severance pay reciting that "[w]hen a permanent employee is terminated because of suspension of business, merger of business, or permanent reduction of staff, severance pay will be paid" on the basis of a schedule specifically set forth. In 1961, the business of Vogue Pattern Service was failing, and the defendant, on January 20, 1961, entered into a licensing agreement under which the Butterick Company, hereinafter called Butterick, would carry on the Vogue Pattern Service. The agreement provided that Butterick would offer employment to all personnel then employed by the defendant in designated departments on terms and conditions substantially the same as those then offered by the defendant; that Butterick would offer these employees the opportunity of participating in its own pension plan, waiving a three-year eligibility requirement, but that Butterick would be under no obligation to grant any past service credit for any employment by the defendant; and that Butterick's obligation to pay separation pay would arise only if

the employment was terminated after specified dates. The defendant assembled the plaintiffs and announced the agreement to them at a meeting three days later. They were then told that, if they were employed by Butterick, they would be eligible for all benefits available to Butterick employees and that Butterick, in determining eligibility for benefits, would give them full credit for benefits accrued by reason of their length of service with the defendant under its retirement plan. They were told, in substance, that the agreement with Butterick would enable the Vogue Pattern Service to continue and would avoid the necessity of the defendant's terminating the plaintiffs' employment which would otherwise be necessary owing to the defendant's declining business. They were also told that, since they would still be working for Vogue Pattern Service if they chose to work for Butterick, they would not be entitled to severance pay from the defendant. The defendant asked them to go on the Butterick payroll and told them that an employee who did not do so would receive no severance pay.

It was the defendant's claim that all plaintiffs decided to accept the new arrangement and to go on the Butterick payroll and that, on April 1, 1961, they were transferred accordingly. Each received final pay slips from the defendant without demanding or receiving severance pay. From and after April 1, 1961, they continued to do their same type of work in the same location and were paid by Butterick.

It was the claim of the plaintiffs, on the other hand, that they never knew of the existence of the license agreement between the defendant and Butterick until after it was made, that the agreement

itself was never shown to them, and that its terms were not fully explained to them prior to April 1, 1961. They claimed that they were given final pay slips by the defendant on March 31, 1961, with no severance pay, and that, on that date, their employment with the defendant terminated with a consequent permanent reduction in the defendant's staff. They claimed that they never agreed to accept Butterick as their new debtor for severance pay or to discharge the defendant from its liability to them for severance pay and that they were automatically transferred to the Butterick payroll by the defendant on April 1 without the alternative voluntary choice of accepting a termination of their positions with the defendant on March 31 and receiving severance pay from it.

At the conclusion of the trial on these conflicting claims of proof, the defendant requested the court to charge in nine particulars. The first was that the jury be instructed, as a matter of law, that the plaintiffs were third-party beneficiaries of the contract between the defendant and Butterick and, as such, were entitled to enforce the contract against Butterick as fully as though it had contracted directly with them. The court refused to charge as requested, and the refusal is not reversible error. The primary issue being litigated was the defendant's liability to the plaintiffs under its separate employment contract with them. The plaintiffs were not seeking a recovery against Butterick, and the contract between that company and the defendant was pleaded as a defense by the latter in an effort to establish a novation. That defense raised the issue whether the defendant had succeeded in proving a novation. It presented no issue as to what the plaintiffs' rights against Butterick would be if a novation was

proved. The requested charge was not required under the claims of proof.

The remaining eight requests to charge related to various elements essential to create a novation. The finding discloses that the court charged the jury at length as to what constituted a novation and as to its legal effect. The charge was accurate, adequate and, in substance, included the material portions of the requests. The failure to charge in the exact language of the requests is not error. *Fasanelli* v. *Terzo,* 150 Conn. 349, 354, 189 A.2d 500. The errors assigned in the refusal to charge as requested are without merit.

We come now to the final assignment that the court erred in refusing to set aside the verdict. This claim is reviewed on the evidence set forth in the appendices to the briefs. Practice Book § 718; *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 703, 220 A.2d 449. The parties have filed extensive appendices from which the facts basic to the controversy as related in the finding already appear. Beyond that there was evidence from which the jury could have found as follows: The plaintiffs were permanent employees of the defendant and ceased to be such on April 1, 1961, as a result of the defendant's action. The defendant had no intention of rehiring them. This action resulted in a permanent reduction of the defendant's staff. The plaintiffs were told that any of them who stayed with the defendant "until such time as their work tapers off" would receive severance pay but that those who left voluntarily on April 1 would receive none. Severance pay was one of the benefits conferred by the defendant on its employees, to which the employee would become entitled, among other reasons, in the event of a permanent reduction

of staff. The plaintiffs never stated that they would not seek severance pay of the defendant. The provision as to severance pay as quoted from the finding was in effect on March 31, 1961. The plaintiffs knew nothing of the agreement between the defendant and Butterick until after it was signed. The plaintiffs went to work for Butterick because they were automatically transferred there by the defendant without being requested to transfer there and without either an oral or a written agreement by them to such a transfer.

There can be no question that, as a result of the licensing agreement with Butterick, the defendant permanently terminated its employer-employee relationship with the plaintiffs and, at the same time, effected a reduction in its staff. That termination, without more, served to entitle the plaintiffs to severance pay under the terms of their employment contract. *Willets* v. *Emhart Mfg. Co.,* 152 Conn. 487, 491, 208 A.2d 546. The defendant sought to escape this result by proving that the circumstances established a novation by indicating that the plaintiffs had, by their actions, expressed acceptance of Butterick in lieu of the defendant as the company to which they would look for severance payments. "Novation" is a term usually used to refer to instances in which a new party is introduced into a new contract. *Riverside Coal Co.* v. *American Coal Co.,* 107 Conn. 40, 44, 139 A. 276. It requires proof that the one in the position of creditor, in this case the plaintiffs, had accepted a new debtor, in this case Butterick, in the place of the defendant to which they would look for fulfilment of the severance pay obligation owing to them. *Norwalk Tire & Rubber Co.* v. *Manufacturers' Casulty Ins. Co.,* 109 Conn. 609, 614, 145 A. 44. In addition, it requires proof that the

plaintiffs had agreed to a discharge of the defendant's obligation to them. *Windsor Cement Co.* v. *Thompson,* 86 Conn. 511, 513, 86 A. 1. These were questions of fact for the jury. They have been resolved by the jury against the defendant, and there was evidence before the jury, disputed but nevertheless sufficient if believed, to support that result. The court was correct in refusing to set aside the verdict.

There is no error.

In this opinion the other judges concurred.