**Harry JUNG, individually and on behalf of all other persons similarly situated, Plaintiffs-Appellants,**

**v.**

**FMC CORPORATION, a Delaware Corporation, Defendant-Appellee.**

C.A. No. 83–2083.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1984.

Decided March 12, 1985.

Mark H. Lipton, Lipton & Lipton, San Jose, Cal., for plaintiffs-appellants.

James R. Renfroe, Chicago, Ill., Craig E. Epperson, D. Ward Kallstrom, Lillick, McHose & Charles, San Francisco, Cal., for defendant-appellee.

Before FAIRCHILD,* Senior Circuit Judge, and GOODWIN and BOOCHEVER, Circuit Judges.

FAIRCHILD, Senior Circuit Judge:

Plaintiff-appellant Harry Jung, individually and on behalf of all persons similarly situated, brought this class action against defendant-appellee FMC Corporation (FMC) to enforce rights to severance pay under an FMC policy which constitutes an employee welfare benefit plan under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* This action is authorized by 29 U.S.C. § 1132(a)(1)(B) and jurisdiction is conferred by 29 U.S.C. § 1132(e).

The district court granted summary judgment in favor of appellee FMC. We affirm.

## FACTS

Plaintiffs in this class action are all former salaried employees of the Engineered Systems Division of FMC. Plaintiffs rely on language in a Policy Guide, more fully described later, which in substance provided that when "a lack of work situation occurs," there will be an effort to place the affected employee in other FMC locations, and if that is not accomplished, the employee is entitled to severance pay. The amount is one week's pay for each year of service, but no more than twelve weeks' pay.

As of June 1, 1981 FMC sold the Engineered Systems Division to ESD Corporation (ESD), a corporation wholly owned by Nesco. As part of the sale ESD agreed to offer employment to all salaried employees of the division at "comparable salary" and to establish fringe benefit programs (including severance pay) that would provide "a substantially comparable level of benefits" to those provided by FMC. ESD agreed to accord full credit for past FMC employment for the purpose of computing severance pay. Presumably ESD's assumption of this obligation was reflected in the purchase price negotiated by FMC.

Although the contract of sale permitted ESD to modify benefit programs, once established, as FMC might have done, ESD had not made changes in severance pay by the time the facts were presented on motion for summary judgment. In fact 24 of the approximately 200 transferred salaried

---

* Honorable Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

employees had been laid off at various dates from June 1, 1981 to March 4, 1983, and ESD had made severance payments computed on the basis of full FMC–ESD employment.[1]

Plaintiffs were advised of the sale after it had been agreed upon, advised of their right to continue their employment with ESD, and told they would not receive severance pay as a result of the sale. All salaried employees of FMC's Engineered Systems Division were transferred from FMC's payroll to ESD's payroll simultaneously with ESD's acquisition of the assets and good will of the Division.

Plaintiffs then brought this action, alleging that as a result of the sale of the Division FMC terminated their employment and wrongfully deprived them of severance pay benefits due under the Policy Guide in violation of ERISA. Both sides moved for summary judgment. Plaintiffs made no showing that ESD has not or will not continue the severance pay policy, nor that it lacks capacity to perform in the future. The district court granted summary judgment in favor of the defendant, FMC Corporation, concluding that the clear language of the plan did not entitle plaintiffs to severance pay and that the defendant's interpretation of the plan was in good faith and consistent with ERISA. Plaintiffs appeal.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and the moving party should prevail as a matter of law. F.R.Civ.P. 56(c); *Gould v. Mutual Life Ins. Co. of New York,* 735 F.2d 1165, 1166 (9th Cir.1984). Review of a summary judgment is *de novo. Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 656 (9th Cir.1984) (*per curiam*). On this appeal we review the decision of the welfare benefit plan administrator, applying to it the same standard of review as the district court has done. *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.1984).

The parties agree that the FMC Policy Guide is an "employee welfare benefit plan" within the meaning of ERISA.[2] The plan is not funded, nor required to be. 29 U.S.C. § 1081(a)(1). FMC was the administrator, 29 U.S.C. § 1002(16), and as such a fiduciary *ibid.* (14). Under § 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1), a fiduciary must discharge his or her duties with respect to the plan "solely in the interest of the participants ... and ... in accordance with the documents and instruments governing the plan...." This court has held that trustees' actions are subject to the same standard of review under ERISA's fiduciary obligation as they are under the Labor Management Relations Act (LMRA).[3] *See, Music v. Western*

1. Somewhat illogically, the 24 were not included in the plaintiff class. Yet if plaintiff's theory has merit, these 24 would have an equal right.

2. ERISA broadly defines "employee welfare benefit plan" to include:
   [A]ny plan, fund, or program which was ... established or maintained by an employer ... to the extent that such plan was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) ... unemployment, or vacation benefits, ... or (B) any benefit described in 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
   29 U.S.C. § 1002(1). Severance pay, "which in general is intended to tide an employee over while seeking a new job, certainly could be considered an 'unemployment benefit.'" *Petrella v. N.L. Industries,* 529 F.Supp. 1357, 1361

(D.N.J.1982); *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209, 1211 (7th Cir.1983). Furthermore, § 186(c), cited in subsection (B) explicitly mentions severance benefits. According to Department of Labor Regulations, the effect of citing § 186(c) is "to include within the definition of 'welfare plan' those plans that provide holiday and severance benefits, and benefits which are similar." 29 C.F.R. § 2501.3–1.

3. Section 302 of the LMRA, 29 U.S.C. § 186, in general forbids an employer to make any payment of money to any representative of its employees and forbids such representatives to accept such payments. Section 302(c)(5) creates an exception for payments to an employee welfare or pension fund by providing that the general prohibitions of § 302 do not apply "with respect to money or other things of value paid to a trust fund established by such representative, *for the sole and exclusive benefit of the employees of such employer.*" 29 U.S.C.

*Conference of Teamsters Pension Trust Fund,* 712 F.2d 413, 418 (9th Cir.1983). Under that standard trustees' decisions "may be reversed only where they are arbitrary, capricious or made in bad faith, not supported by substantial evidence, or erroneous on a question of law." *Music,* 712 F.2d at 418; *Elser v. IAM National Pension Fund,* 684 F.2d 648, 654–56 (9th Cir. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); *Fentron Industries v. National Shopmen Pension Fund,* 674 F.2d 1300, 1307 (9th Cir.1982); *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 654–55 (9th Cir.1981); *Gordon v. ILWU–PMA Ben. Funds,* 616 F.2d 433, 438 (9th Cir.1980). Those cases deal with trustees under a funded plan. Here we are dealing with the interpretation by an employer-administrator of the terms of the employer's unfunded welfare benefit plan. We see no reason why ERISA calls for a different standard of review here. Courts have applied that standard of review to actions administering unfunded employee welfare benefit plans like this one. *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209 (7th Cir.1983). *See also, Blau v. Del Monte Corp.,* 748 F.2d at 1353. Where the language used by the employer in holding out the plan is open to a construction supporting denial of a claim, the court should decide whether the choice of that construction is arbitrary or capricious.

At the district court and in their briefs to this court both parties agreed that the arbitrary and capricious standard should be applied in reviewing FMC's decision. Subsequently the appellants brought to the court's attention *Struble v. N.J. Brewery Emp. Welfare Trust Fund,* 732 F.2d 325 (3rd Cir.1984). *Struble* involved a fund into which employers paid at a rate agreed upon with the Union. By reason of favorable experience, a surplus arose. The Employer Trustees voted to reduce employer contributions rather than increase the level of benefits, as favored by the Union Trustees. The dispute was submitted to an Umpire who decided in favor of the reduction of contributions. The Third Circuit declined to apply the arbitrary and capricious standard of review to the votes of the Employer Trustees, apparently concluding that that standard applies where a decision on a claim for benefits for an individual or class of individuals involves a balancing of the interests of present alleged beneficiaries against the interest of future beneficiaries. 732 F.2d at 333. Where the decision involves conflict between beneficiaries and non-beneficiaries, the Third Circuit concluded that a different standard of review must be applied. As we understand *Struble,* the court must independently determine whether the "Trustees acted with the requisite prudence and with complete and undivided loyalty to the beneficiaries." 732 F.2d at 334.[4]

■ *Struble* involved an existing trust fund, and a rejection by employer-selected trustees of a proposed increase in benefits in favor of reducing the contributions the employers had agreed to dedicate. Plans like the one before us have no arrangement for funding, the employer has formulated the terms under which benefits will be paid, benefits are paid directly by the employer, and the employer makes all decisions on claims. Whatever may be the appropriate standard of review in cases like *Struble,* the arbitrary and capricious standard seems adequate for the purposes of ERISA in the situation before us. Where, as here, the employer's denial of benefits to a class avoids a very substantial outlay, the

§ 186(c)(5) (emphasis added). The requirement that trustees act "for the sole and exclusive benefit of the employees" has been held to impose upon the trustee traditional fiduciary obligations, *NLRB v. Amax Coal Co.,* 453 U.S. 322, 330, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981), and subject decisions of the trustee to an arbitrary and capricious standard of judicial review. *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir. 1976).

4. "ERISA requires that all fiduciaries act 'solely in the interest of the participants and beneficiaries' (the duty of loyalty) and with the 'care, skill, prudence, and diligence' of a prudent man acting in like circumstances (the duty of care). 29 U.S.C. § 1104(a) (1976)." *Struble v. N.J. Brewery Emp. Welfare Trust Fund,* 732 F.2d at 332–33.

reviewing court should consider that fact in applying the arbitrary and capricious standard of review. Less deference should be given to the trustee's decision. The district court applied the correct standard in this case.

### ANALYSIS

Under ERISA, as under the Labor-Management Relations Act, "[W]here the rules are susceptible to more than one reasonable interpretation, the court may not substitute its judgment for that of the trustees." *Gordon v. ILWU–PMA Ben. Funds,* 616 F.2d at 439; *Smith v. CMTA–IAM Pension Trust,* 654 F.2d at 655.

■ Appellants point out that the sale of the division terminated their employment relationship with FMC, and they argue that a termination which was involuntary on their part, and not for cause, entitled them to severance pay. The Policy Guide on which they rely clearly did not say that, and did not require that reading.

The Policy Guide was a five-page document entitled "Termination of Salaried Employees." It described procedures applicable generally to employees upon termination, including exit interviews, information concerning benefits, and leave of absence. Under a heading *"Voluntary Termination,"* it indicated the period of notice expected. Under the heading *"Involuntary Termination,"* it set forth procedure for involuntary termination for unsatisfactory performance or misconduct. Under the heading "Lay-Off," elsewhere defined as "Any involuntary termination caused by a lack of work," it spelled out procedure as follows:

1. When a lack of work situation occurs, the division shall provide other local divisions with a description of the affected employee's background and advise the Director of Personnel, San Jose Division. The Director will coordinate the effort to place the affected employee(s) in other FMC locations.

2. If placement elsewhere within FMC is not accomplished, the employee shall be entitled to severance pay unless the employee refuses a comparably-paid (within 10 percent of present salary) position. This pay will be granted on the basis of one week's pay for each completed year of continuous service to a maximum of twelve weeks.

3. If an employee in a lay-off situation is placed in a temporary position in another division and is subsequently laid off, the division originally initiating the lay-off shall be charged for the resulting severance pay until the employee has worked for one year. Subsequently, all obligations will fall on that division.

4. Employees terminating due to lack of work shall be:

   a. Counseled and assisted in making contact for employment opportunities.

   b. Provided with a copy of Employment Development Department Form DE 2320, "Unemployment Insurance Program."

   c. Provided with written evidence of a leave of absence equal to their length of service up to a maximum of one year.

Nothing in the Policy Guide refers to a termination resulting from a sale of business. Plaintiffs appear to reason that the Policy Guide must be deemed to cover every type of termination (except for death, disability, or retirement) and that every type of termination at the will of the employer, except for unsatisfactory performance or misconduct, must be deemed a lay-off. We do not find that to be the only reasonable construction of the provisions. The language concerning layoff describes a particular type of loss of job, not including a termination of the employment relationship resulting from a sale in which the Buyer accepts the obligation to continue the jobs and to establish an equivalent plan of severance payments.

FMC takes the position that the change of employers was not a termination but a transfer. We must acknowledge that a termination of the employment relationship

with FMC occurred. It seems reasonable, however, to treat this termination as not falling within the Policy Guide.

Another portion of the Policy Guide provided:

Terminations, by their very nature, can be traumatic experiences for both the employer and employees. Therefore, every effort should be made to minimize mutual inconvenience so that the adverse effect on both employee relations and production will be as minimal as possible under the circumstances. Adherence to the following procedure will ensure this.

The district court found that there was no trauma as contemplated by the plan because no one was put out of work. Appellants argue that the trauma in this instance is the change in employers and that a lack of employment is not necessary for the provision to apply. We find the district court's reading of the plan to be more in keeping with its language and with common understanding. *See, Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1211 (7th Cir.1983) ("Severance pay is generally intended to tide an employee over while seeking a new job and should be considered an unemployment benefit."); *Petrella v. N.L. Industries*, 529 F.Supp. 1357, 1361 (D.N.J. 1982). In addition, the layoff provisions of the plan appear to contemplate a situation where the employees are without further employment for at least some period of time subsequent to the layoff. The Policy Guide provides for placement efforts among other FMC divisions and employment opportunity counseling. These services would be unnecessary in a divestiture and transfer situation.

Thus the clear language of the plan does not mandate the payment of severance benefits upon divestiture and transfer of employees, at least where FMC has made the arrangement made with the Buyer here. Assuming any range of reasonable interpretation, FMC was entitled to construe the provisions of the plan provided that it did not do so arbitrarily or capriciously.

[W]hen the administrators of a labor-management pension fund have been given authority to determine eligibility under the Plan, their reasonable resolutions of any ambiguities in the Plan's language will be sustained by this court. *Gordon v. ILWU–PMA Benefit Funds, supra,* 616 F.2d at 439; *Aitken v. IP & GCU-Employer Retirement Fund,* [604 F.2d 1261, 1266 (9th Cir.1979)]. Also where the rules are susceptible to more than one reasonable interpretation, we have said that the court may not substitute its judgment for that of the trustees.

*Smith v. CMTA–IAM Pension Trust,* 654 F.2d at 655.

■ Appellants argue that if there is an ambiguity in the plan, such ambiguity should be construed in favor of plan participants. However, in *Rehmar v. Smith,* 555 F.2d 1362, 1369 (9th Cir.1976), "this court explicitly rejected the principle that an ambiguity in a plan should be interpreted in favor of coverage." *Smith v. CMTA–IAM Pension Trust,* 654 F.2d at 655.

We conclude, on the present facts, that FMC's interpretation of the plan as not providing for severance benefits upon divestiture and transfer of employment with the protection FMC had arranged for was a reasonable interpretation, made in good faith, and therefore not arbitrary or capricious under ERISA.

FMC's interpretation of the policy in this instance is consistent with its practice in other similar situations. In at least six other divestitures prior to the ESD sale FMC did not award severance pay to former employees who were immediately rehired in comparable positions by the purchasers of those plants or divisions. The district court concluded that there was no evidence that FMC had a policy of paying severance benefits in situations analogous to this case. While the severance plans applicable in those situations may not have been identical to the plan at issue here, the evidence nonetheless demonstrates a uniform practice on FMC's part not to pay severance benefits under comparable circumstances. *See, Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d at 1213.

The district court noted that to allow plaintiffs to recover severance pay would, in effect, allow a windfall double recovery since they would receive benefits based upon employment with FMC both at the time of divestiture and presumably again if subsequently laid off by ESD. The district court found that one of the goals of ERISA was to keep plans within reasonable costs and that, although there is no prohibition of double recovery under ERISA, policy considerations behind ERISA suggest that double recovery should not be favored. *See, Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d at 1211 (" 'To award severance benefits under these facts would result in a windfall to the employees who retained their positions with the purchaser of the going concern, which was clearly not the intention or goal ... of ERISA.' ").

There is no suggestion that FMC acted in bad faith. The employees' ERISA-covered benefits have not been undermined as a result of the divestiture and transfer of employment.

In arguing that the terms of the plan called for severance pay at the time of divestiture, plaintiffs rely on a number of decisions of state courts holding that an employer's announced policy of paying severance benefits ripened into a contract, and that the benefits became due upon sale of the business. *See, e.g., Dahl v. Brunswick Corporation,* 277 Md. 471, 356 A.2d 221 (1976); *Chapin v. Fairchild Camera Instrument Corp.,* 31 Cal.App.3d 192, 107 Cal.Rptr. 111 (1973); *Hinkeldey v. Cities Service Oil Co.,* 470 S.W.2d 494 (Mo.1971); *Mace v. Conde Nast Publications, Inc.,* 155 Conn. 680, 237 A.2d 360 (1967); *Willets v. Emhart Manufacturing Company,* 152 Conn. 487, 208 A.2d 546 (1965).

■ In the first place, the relevant provisions of ERISA have superseded state law, including decisional law, relating to an employee benefit plan. 29 U.S.C. § 1144(a) and (c).

Furthermore the state law cases just cited involve different facts. In all but *Chapin* and *Willets* the critical language turned on the general terms termination, severance, or separation. Although in *Chapin* and *Willets* the policy used the terms layoff and lack of work, it did not contain the terms of the Policy Guide reflecting concern over a period of unemployment. In *Chapin* the court appeared to attach importance to the facts that the employees were hired by the Buyer under substantially different terms that did not provide severance pay of the same duration and did not undertake to discharge the Seller's obligation of severance pay. 107 Cal.Rptr. at 116.

And as already noted, this court rejects the proposition intrinsic in the foregoing state law contract cases, that the plan must be construed in favor of coverage.

Furthermore, state law on this question has not uniformly found severance benefits payable upon divestiture. *See, Younger v. Thomas International Corp.,* 275 Ark. 327, 330, 629 S.W.2d 294, 296 (1982) (No job termination entitling employees to severance benefits occurred when, though employer sold plant to another corporation, all employees continued to work at the same plant, doing the same or similar job at at least the same salary and where "approximately the same benefits were adopted [by the successor] and made retroactive to the date of the transfer.").

*Livernois v. Warner-Lambert Co., Inc.,* 723 F.2d 1148 (4th Cir.1983), is a diversity case, applying state contract law. The ultimate holding is that the Seller will be liable for severance pay if in the future an employee is terminated by the Buyer as a result of job elimination or company convenience, but the sale of the business does not give rise to such liability.

This court recently held that it was arbitrary and capricious for an employer to deny separation allowances when a business was sold. *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984). The *Blau* court relied heavily on Del Monte's pervasive violations of ERISA's reporting and disclosure requirements in finding the denial of benefits arbitrary and capricious. The termination policy in *Blau* was "active-

ly concealed" from the employees, who were never informed of its existence. Moreover, the employer never responded to the employees' demands for severance pay. Plaintiffs in the present case have not focused on any similar flagrant procedural violations of ERISA on the part of FMC. There has been no demonstration, as in *Blau,* that the employer "flouted in such a wholesale and flagrant manner" (*Blau,* at 1353) the reporting and disclosure provisions of ERISA.

In addition, the employer in *Blau* did not obtain from the purchaser an obligation to employ plaintiffs and to establish a plan of severance benefits in the event of subsequent layoff.

Finally, the language of the two plans is different. As stated in *Blau,* 748 F.2d at 1354, "[t]he plan provides for severance pay when jobs are *'eliminated'* and 'alternative *employment opportunities are unavailable within the Corporation'*[2] (emphasis supplied [by *Blau* court])." In footnote 2 the court distinguished this language from the plan in *Sly v. P.R. Mallory & Co.,* 712 F.2d 1209 (7th Cir.1983), a case which is closer on its facts to the one before us.

In *Sly v. P.R. Mallory & Co., Inc.,* 712 F.2d 1209 (7th Cir.1983), under factual circumstances very similar to the case at hand, the court upheld an employer's determination that company employees who were terminated upon the sale of a division but immediately hired by the buyer corporation were not entitled to receive severance pay under the selling employer's severance policy. In concluding that the employer's decision not to pay benefits was not arbitrary or capricious under ERISA the court noted (1) that the plan, read as a whole, anticipated the recipient of severance benefits to be without employment, (2) that awarding benefits under the circumstances would result in a windfall to the employees not intended by the plan or ERISA, and (3) that the employer had uniformly declined to pay severance benefits to former employees who were immediately rehired in comparable positions by the purchasers of sold plants or divisions. All of these circumstances are present in the instant case. Moreover this case appears stronger for the employer because of FMC's contractual arrangement with the Buyer for continued employment and severance benefit policy not present in *Sly.*

## CONCLUSION

The clear language of the FMC policy guide did not require the payment of severance benefits upon divestiture with comparable reemployment by the purchasing company and FMC's refusal to pay such benefits was not arbitrary, capricious, or contrary to law.

We affirm the judgment of the district court.