**Amos PIPPIN, et al., Plaintiffs,**

**v.**

**RCA GLOBAL COMMUNICATIONS, et al., Defendants.**

**No. C–89–1205 FMS.**

United States District Court,
N.D. California.

Feb. 7, 1991.

James A. Carter, Karen T. Dutton, Hendrickson, Higbie & Carter, San Francisco, Cal., for plaintiffs.

James C. Paras, Gregory A. Bonfiglio, Debra L. Hamilton, San Francisco, Cal., for RCA Corp., General Elec. Corp.

Cooper, White & Cooper, Margaret Hart Edwards, Karl Olson, San Francisco, Cal., for MCI Intern., Inc., RCA Global Communications.

## MEMORANDUM OF DECISION GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

FERN M. SMITH, District Judge.

"Hired to be fired." That was the plight of five long-time employees on the wrong end of the sale of one company to another. The employees, plaintiffs in this case, received termination letters the day after they were "transferred" to their new company. The federal statutes regulating employee retirement and severance plans forbid such sham arrangements. The Court rules that these employees should recover all the severance benefits to which they are entitled.

### PROCEDURAL BACKGROUND

Plaintiffs filed a complaint alleging twelve claims for relief on April 10, 1989. After various pretrial skirmishes, voluntary dismissals, and Court rulings, plaintiffs were left with one claim for wrongful denial of severance benefits.

The parties then filed cross-motions for summary judgment. After careful consideration of the papers and oral argument, the Court granted plaintiffs' motion for summary judgment and denied defendants' motion for summary judgment at a hearing on October 31, 1990.

The parties then requested that the Court delay issuing its final Decision; they subsequently indicated that there was no reason for the Court not to issue a written memorandum. This Memorandum of Decision shall serve as the Court's findings of fact and conclusions of law on its grant of plaintiffs' motion for summary judgment.

### FACTS

The basic facts of this ERISA claim are undisputed. *See* Employee Retirement Income Security Act, as amended, 29 U.S.C.A. § 1001 *et seq.*, (West 1985 and Supp. 1990). Five individual plaintiffs have sued RCA Global Communications ("RCAG") and MCI International Inc. ("MCI") for violations of ERISA arising out of an alleged denial of full severance benefits in 1988.

Each plaintiff had worked at RCAG, a subsidiary of RCA Company, for over twenty-two years. General Electric Company ("GE") bought RCAG in 1986, then sold RCAG to defendant MCI on May 16, 1988.

RCAG's Severance Allowance Plan ("the Plan") covered plaintiffs during the relevant time period. The Plan provided that regular salaried RCAG employees were entitled to severance benefits if their active employment was terminated because of an "involuntary layoff." The Plan defined involuntary layoff as "permanent reduction in force; organizational realignment; discontinuance of an operation; ... sale of an operation to another company; ... [or] location closing." Employees who had worked for RCAG for twenty-two years or more were entitled to fifty-two weeks of severance pay under the Plan. Severance allowance benefits were not payable if RCAG sold a business operation to another company under terms that enabled the RCAG employees to step into the acquiring company at "substantially the same or higher" salary.

MCI began negotiating for the purchase of RCAG some time in 1987. Before the deal between GE and MCI closed in the spring of 1988, the companies executed the October 29, 1987 stock purchase agreement. It provided:

> Effective on or immediately prior to the Closing Date, employee members of the [RCAG] Group will no longer be eligible to participate in RCA Welfare Benefit Plans because the [RCAG] Group will no longer be subsidiaries of [GE] and [GE] will cause each member of the [RCAG] Group with employees covered by the RCA Welfare Benefit Plans to withdraw and terminate participation in those Plans as to its respective employees.

This provision of the stock purchase agreement meant that, after the closing, plaintiffs and other RCAG employees would lose their RCAG benefits, including the RCAG severance packages that they would have received under the Plan, and would be covered by the less desireable MCI sever-

ance plan. MCI's plan offered a maximum benefit of thirty weeks.

MCI held benefit orientation meetings with RCAG employees around the country in December 1987. Some plaintiffs attended these meetings, and all received a fifty-one page MCI benefits brochure. The meetings and the brochure informed plaintiffs that MCI benefits and policies would apply to former RCAG employees after RCAG became part of MCI. Plaintiffs filled out enrollment forms to receive MCI benefits.

Having gone to the meetings and read the brochure, plaintiffs believed they were becoming part of MCI. Little did they know that their future employer had decided, before MCI's purchase of RCAG became final, to lay them off. The deal closed on May 16, 1988, and defendants concede the evidentiary inference that MCI had decided to terminate plaintiffs "in the last few days" before the transaction was completed. Transc. Oct. 31, 1990 hearing, at 2.

The day after the closing, May 17, 1988, MCI sent out termination letters to plaintiffs. The letters informed plaintiffs that they were terminated as of the end of May. Except for one plaintiff, they were directed not to return to work after receiving the termination letters. For the few days in May 1988 between the closing and their termination, plaintiffs were on the MCI payroll. The exact number of days on the job at MCI varies by plaintiff, but four of the five were out of work by May 30, 1988, less than two weeks after the closing.[1]

When plaintiffs sought fifty-two weeks of severance benefits, MCI took the position that plaintiffs had become MCI employees for the few days that elapsed between May 16 and their receipt of the May 17 termination letter. As MCI "employees," they were to be covered by the MCI severance plan and thus limited to MCI benefits, not RCAG benefits. The MCI plan awarded plaintiffs thirty weeks of severance pay, not the fifty-two weeks available under the RCAG Plan.

## ANALYSIS

■ This Court has jurisdiction under 28 U.S.C.A. sections 1331 and 1337. ERISA authorizes private parties to bring civil actions for benefits due under an employee benefit plan. 29 U.S.C.A. §§ 1132(a)(1)(B), 1132(a)(3).

Plaintiffs' ERISA claim alleges that each plaintiff "was entitled to receive severance pay benefits pursuant to the 1986 [RCAG] Plan because he was terminated by [RCAG] at the time of the takeover by MCI, and [RCAG] was aware that he would not be retained by MCI." 1st Am. Cplt ¶ 41. ERISA prohibits an employer from discharging employees "for the purpose of interfering with the attainment of any right to which" the employees may be entitled under the employer's benefit plan. 29 U.S.C.A. § 1140.

■ The Court finds that defendants' conduct toward plaintiffs violated section 1140. The undisputed facts show that defendants structured the employment relationship with plaintiffs, at least in part, "for the purpose of" depriving them of full severance benefits under the RCAG Plan. *See id.*

The facts set forth above make this an easy case. As RCAG employees, plaintiffs were entitled to fifty-two weeks of severance pay. As MCI employees, they were entitled to only thirty weeks. Before the sale closed, MCI decided that plaintiffs would not have jobs with MCI. Nonetheless, plaintiffs were not told of this decision, but were "transferred" to MCI upon completion of the sale. The day after MCI bought RCAG, MCI sent out a termination letter to plaintiffs. This timing defeats any argument by defendants that the transfer was in good faith.

A rational trier of fact could draw only one inference from these events—plaintiffs' momentary employment with MCI was a sham, designed to deprive plaintiffs of severance benefits to which they were otherwise entitled. Plaintiffs may have had the trappings of MCI employment for a

---

1. Plaintiff Tarantino's termination was effective on June 10, 1988. Ds' SJ Mem. at 9.

few days, and may have in fact believed that they were MCI employees, but this employment was illusory. There was no transfer to MCI, merely the appearance of one. Plaintiffs' employment with RCAG was terminated before they became MCI "employees." They are entitled to RCAG severance benefits, and other damages allowed under ERISA. *Cf. Jung v. FMC Corp.*, 755 F.2d 708, 712–14 (9th Cir.1985) (termination of employment at acquired company occurred, but no severance pay was owed because no one was put out of work and employer acted in good faith).

Summary judgment is appropriate because the evidence shows that there are no genuine issues as to any material facts. The record of this case, taken as a whole, could not lead a rational trier of fact to find for defendants. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (dispute is not genuine unless "a reasonable jury could return a verdict for the nonmoving party"). The absence of genuine issues of material fact, and the Court's obligation to review the Plan administrator's denial of benefits de novo, mandate summary judgment in this case. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). Plaintiffs are entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c).

The Court emphasizes that its sham finding is based on the overwhelming inference that, as recipients of the May 17 termination letter, plaintiffs were hired to be fired. The Court expresses no view as to whether former RCAG employees who did not receive the letter, but were fired shortly after the acquisition, were also victims of a ploy to deny them severance benefits.

### CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment is granted. Judgment shall be entered for plaintiffs.

The Court will retain jurisdiction over damage calculations, attorneys' fees, costs,

prejudgment interest, and related matters. In all other respects, this judgment is final.

IT IS SO ORDERED.