Ralph DRYBROUGH, Plaintiff,

v.

ACXIOM CORP., Defendant.

No. CIV. A. 300CV153(CFD).

United States District Court, D. Connecticut.

Oct. 25, 2001.

Bennett H. Last, Gilbride, Tusa, Last & Spellane, Greenwich, CT, Mark J. Kovack, Wake, See, Dimes & Bryniczka, Westport, CT, for Plaintiff.

Felice M. Duffy, Murtha Cullina LLP, Hartford, CT, Barry J. Waters, Murtha Cullina LLP, New Haven, CT, Conrad S. Kee, Christine P. Shields, Stamford, CT, for Defendant.

## *RULING ON MOTION TO DISMISS*

DRONEY, District Judge.

### I. *Introduction*

This action arises out of events surrounding the plaintiff's discharge by his former employer, Acxiom Corporation ("Acxiom"). Plaintiff Ralph Drybrough ("Drybrough") alleges the following causes of action in his Amended Complaint: breach of oral and written agreements; promissory and equitable estoppel; fraud; negligent misrepresentation; unjust enrichment; entitlement to unpaid wages and fringe benefits under Conn. Gen.Stat. §§ 31–71c, 31–71g, 31–72, and 31–76k; and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.Stat. § 42–110a *et seq* .[1] Pending is the defendant's Motion to Dismiss [Doc. # 10] the plaintiff's ninth and tenth claims for relief, which pertain to the Connecticut wage and fringe benefits statutes and CUTPA, respectively.

### II. *Background* [2]

Axciom (and its predecessor Direct Media/DMI Inc. ("Direct Media")) is in the

---

1. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the plaintiff is a citizen of Connecticut and the defendant is a corporation organized in Delaware and with a principal place of business in Arkansas. The parties do not dispute jurisdiction.

2. Because the defendant seeks dismissal under Rule 12(b)(6), the Court will consider "the factual allegations in plaintiff[']s[ ] amended complaint, which are accepted as true, ... documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *See Brass v. American Film Techs., Inc.* 987 F 2d 142, 150 (2d Cir.1993).

business of "providing list brokering and management services to business-to-business and consumer list owners and mailers." On February 1, 1988, Drybrough began his employment with Direct Media as a "list broker" in its business unit. Direct Media was subsequently acquired by Acxiom. Over the course of several years, Drybrough became the company's most successful list broker and "established an industry-wide reputation as a respected leader in the business-to-business list marketing industry." Am. Compl. ¶¶ 8–9.

In May 1997, Stephen H. Brighton, Acxiom's "Group Leader," asked Drybrough to become the "Business Unit Leader" of the Brokerage Unit. Drybrough accepted this new position, which required him to give up his own business accounts.

By March 1999, Drybrough had not yet completed shedding his own accounts. At that time, he still was responsible for approximately $1.5 million in brokerage commissions and would have earned over $500,000 as a broker. Acxiom, through Brighton, then asked Drybrough to complete the process of giving up his accounts. Drybrough indicated that he was hesitant to do so because it would mean "he would be giving up the very basis for his future earnings power and [would be] left vulnerable for termination." *Id.* ¶ 17. To induce Drybrough to accept these risks, Brighton promised orally and in a March 29, 1999 letter to treat Drybrough with the "utmost good faith" and also promised that Drybrough would be paid a minimum of one year's earnings should he be terminated. The letter stated that Brighton "would expect that Acxiom and/or executive management would be fair and generous with Ralph over settlement and compensation issues. I suggest that a minimum of one (1) year's pay would be in order ...." Acxiom further represented that Drybrough's base salary would be $390,000,

with a bonus capability of up to $90,000. On April 1, 1999, Drybrough agreed and later completed the divestiture of his accounts. *Id.* ¶ 21.

On December 14, 1999, Brighton terminated Drybrough's employment. Three days later, Brighton left a voice mail message for Drybrough offering him two weeks' severance pay and two-thirds of a guaranteed bonus for the fiscal year's third quarter. Drybrough was last paid on December 15, 1999, which covered his employment through December 14, 1999, but he has not received a severance or bonus payment consistent with the prior representations.

### III. *Standard*

The party moving to dismiss under Rule 12(b)(6) "must carry the burden of showing that 'it appears beyond doubt that the plaintiff[ ] can prove no set of facts in support of [his] claim which would entitle [him] to relief.'" *Ragin v. New York Times Co.,* 923 F.2d 995, 999 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In reviewing a Rule 12(b)(6) motion, a court must "accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### IV. *Discussion*

#### A. *The CUTPA Cause of Action*

Acxiom asserts that Count Ten, which alleges a CUTPA violation, fails to state a claim because: (1) the events alleged occurred within an employment relationship, which is not subject to CUTPA; (2) the

Amended Complaint does not allege Acxiom's actions occurred in the conduct of a trade or business, as required by CUTPA; and (3) the single contract dispute between Acxiom and Drybrough at issue is not within Acxiom's "primary business," another CUTPA requirement.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). CUTPA is remedial in nature and thus "must be liberally construed in favor of those whom the legislature intended to benefit." *Larsen Chelsey Realty Co. v. Larsen*, 232 Conn. 480, 656 A.2d 1009, 1017 (1995) (quotations and citations omitted). A single act may be the basis for a CUTPA claim where the act is alleged to have been committed by a business person in the course of a transaction that was a part of his or her business. *Advest, Inc. v. Carvel Corp.*, No. CV 98–0585401S, 1999 WL 786357, at *3 (Conn.Super.Ct. Sept. 21, 1999).

To state a claim under CUTPA, the plaintiff must allege that the defendant's actions were performed in a trade or commerce. Conn. Gen Stat. § 42–110b; *Pergament v. Green*, 32 Conn.App. 644, 630 A.2d 615, 621 (1993). Trade or commerce is defined as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and real property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." Conn. Gen.Stat. § 42–110a(4). However, "although an employer may engage employees for the purpose of promoting trade or commerce, the actual employment relationship is not itself trade or commerce for the purpose of CUTPA." *Quimby v. Kimberly Clark Corp.*, 28 Conn. App. 660, 613 A.2d 838, 844 (1992) (quotation omitted). When an employment rela-

tionship exists between two parties, actions taken outside the confines of that relationship may constitute violations of CUTPA. *See Larsen Chelsey*, 656 A.2d at 1018. To determine whether certain actions fall within or outside the employment relationship, the defendant's conduct-not the employment relationship-is dispositive. *See Fink v. Golenbock*, 238 Conn. 183, 680 A.2d 1243, 1260 (1996); *Larsen Chelsey*, 656 A.2d at 1017.

The Court concludes that Drybrough has not stated a claim under CUTPA because the Amended Complaint does not allege that the defendant's actions lay "outside the narrow confines of the employer-employee relationship." *Larsen Chelsey*, 656 A.2d at 1018. According to the Amended Complaint, Acxiom required Drybrough's divestiture of his business accounts as a condition of assuming the position of Business Unit Leader. Am. Compl. ¶¶ 10, 14. In exchange for complete divestiture, Acxiom agreed to treat him with "the utmost good faith" and in the event of a termination, to provide him with one year's salary and any bonuses he would have earned. *Id.* ¶¶ 19–22. Acxiom and Brighton took all of these actions as Drybrough's employer, and their actions related to issues typically associated with an employment relationship, including promotion and termination.

Drybrough argues that this situation is analogous to *Larsen Chelsey*, where the Connecticut Supreme Court found the defendant's actions to have occurred outside the employer-employee relationship. In *Larsen Chelsey*, the plaintiff, a real estate company that employed the defendant, alleged that the defendant accepted a job with a competing real estate broker and "then, acting as a competitor, took actions that harmed the plaintiff." 656 A.2d at 1018. In addition, the defendant mailed letters to clients containing false statements that the plaintiff would cease its

operations, and advised the New Haven board of realtors that the plaintiff was going out of business. *Id.* at 1018. The Connecticut Supreme Court held that the anti-competitive actions of the defendant were outside the employment relationship, as they "implicated the services of both Larsen and .the plaintiff as real estate brokers in the New Haven area and thus implicated trade or commerce under CUTPA." *Larsen Chelsey,* 656 A.2d at 1018–19; *see also Fink,* 680 A.2d at 1259–61 (finding a CUTPA violation where a shareholder of a professional medical corporation took steps, such as wrongfully informing clients that the corporation had changed, that placed him in direct competition with the interests of the corporation and prevented another shareholder from practicing medicine with the corporation).

Drybrough argues that the *Larsen Chelsey* factual scenario is similar to that alleged here and that Acxiom engaged in fraud and misrepresentation to induce Drybrough, "a highly successful and well respected individual engaged in the same business as Axciom, to surrender his valuable accounts to Acxiom." Memo. Law. Opp'n. Def.'s Mot. Dismiss at 5. However, unlike the situation in *Larsen Chelsey* and *Fink,* the conduct that forms the basis of the Amended Complaint here is limited to Acxiom's dealings with Drybrough within the confines of the employer-employee relationship, and does not include any dealings with or as a third party competitor of Acxiom. While the Amended Complaint alleges that Acxiom acknowledged that one of the risks of complete divestiture was that Drybrough could not take business accounts with him in the event of a termination, there are no allegations that Acxiom's actions were taken outside the employment relationship to prevent Dryb-

rough from competing with Acxiom once he was terminated, or that the defendant engaged in wrongful conduct after the plaintiff's termination. *See Reynolds, Pearson & Co. v. Miglietta,* No. CV 000801247, 2001 WL 418574, at *7 (Conn.Super.Ct. March 27, 2001) (finding little similarity between the complaint and "the kind of anti-competitive activity conducted outside the employment relationship held to have violated CUTPA" in *Larsen Chelsey* and *Fink* ); *Ranciato v. Nolan,* No. CV 97–0401729, 1999 WL 785504, at *4 ("Unlike the facts in *Fink* and *Larsen Chelsey,* the defendant has not alleged that the plaintiffs took any actions to usurp his business and/or clientele in favor of another business, or that the plaintiff's wrongful business conduct went beyond the scope of the employment relationship.").

Because the defendant's actions are not alleged to have occurred outside the employment relationship, plaintiff has not stated a claim under CUTPA, and the Court need not address the defendant's other arguments concerning the application of CUTPA.

B. *The Cause of Action under Conn. Gen.Stat. §§ 31–71c, 31–71g, 31–72, and 31–76k*

■ Count nine alleges a Connecticut statutory claim for unpaid wages or fringe benefits. Acxiom argues that this count fails to the extent that the plaintiff seeks to recover damages for unpaid severance pay as wages or a fringe benefit. Drybrough maintains that an unpaid bonus constitutes wages that are collectable, but does not address whether any compensation allegedly promised him should be considered severance pay, wages, or a fringe benefit.[3]

---

**3.** The Amended Complaint is unclear as to which payments the plaintiff seeks to collect as "wages." According to the ninth claim for

relief, Acxiom "has manifested a clear and unequivocal intention not to pay Mr. Drybrough severance and a bonus as agreed" and

Under the Connecticut wage statutes, when an employer discharges an employee, the employer must pay the employee's wages in full by the next business day, Conn. Gen.Stat. § 31–71c(b), and is subject to certain penalties if he fails to do so. Conn. Gen.Stat. § 31–71g. In addition, when an employer fails to pay an employee wages under § 31–71c or fringe benefits under § 31–76k, the employee may recover in a civil action twice the amount of the wage or fringe benefit owed him, as well as costs and reasonable attorney's fees. Conn. Gen.Stat. § 31–72. The term "wages" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen.Stat. § 31–71a(3).

In contrast to wages, severance pay is defined as "a kind of accumulated compensation for past services and a material recognition of their past value," *Justin v. AMA Ltd.*, No. CV92 29 33 60, 1993 WL 213707, at *2 (Conn.Super.Ct. June 8, 1993) (quoting *Willets v. Emhart Mfg. Co.*, 152 Conn. 487, 208 A.2d 546, 548 (1965)), or as "a form of compensation for the termination of the employment relation ... primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissed." *Id.* (quotations omitted). Severance pay is not a wages because it is not "compensation for labor or services rendered," *id.* (quotations omitted), and because wages, unlike severance pay, cease when employment does.

*McGowan v. Administrator*, 153 Conn. 691, 220 A.2d 284, 286 (Conn.1966).

The plaintiff argues that the guaranteed (but unpaid) bonus that he earned during the final three months of his employment constitutes wages under § 31–71a(3), *see Butler v. Cadbury Beverages, Inc.*, No. 3:97CV2241(EBB), 1999 WL 464527, at *2 (D.Conn. June 8, 1999) (citing cases), and maintains that his ninth claim for relief should not be dismissed for this reason. However, Drybrough does not address whether any of the other payments allegedly promised him, such as the payment of one year's base salary upon termination, are wages or severance pay. In addition, although Acxiom argues that severance pay is also not a fringe benefit under § 31–76k and thus is not recoverable in a civil action under § 31–72, the plaintiff does not respond to this argument. However, Drybrough does concede that severance pay is not generally recoverable as wages in a civil action under § 31–72, and has not argued that it should be considered a fringe benefit here.[4] Memo. Law. Opp'n Def.'s Mot. Dismiss at 8 n. 1. Thus, to the extent that count nine is based upon severance pay allegedly promised him, the motion to dismiss is granted. To the extent that the defendant argues any other payment, such as his unpaid bonus, constitutes wages, the Court denies the motion to dismiss, as additional facts are needed to determine whether the bonus is a wage under § 31–71(a)(3). This is without prejudice to the defendant raising this issue in a motion for summary judgment.

---

"Acxiom's failure to pay Mr. Drybrough's compensation and severance benefits" violates Connecticut wage collection statutes. Am. Compl. ¶ 78–79. At the same time, in his opposition memorandum, the plaintiff states that count nine seeks "in part, damages for the failure to pay Plaintiff compensation, particularly the guaranteed bonus earned during the final three months of his employment." Memo. Law. Opp'n Def.'s Mot. Dismiss at 8.

4. Some authorities indicate that severance pay may be considered a fringe benefit, *see Woolley v. Bank of Boston Connecticut*, No. 115069, 1994 WL 380421, *2–3 (Conn.Super.Ct. July 13, 1994), but the plaintiff has not asserted such a claim.

## V. *Conclusion*

For the foregoing reasons, the defendant's motion to dismiss is GRANTED IN PART, DENIED IN PART. The ninth claim for relief is dismissed, but only to the extent that it relates to a severance payment. The tenth claim for relief is dismissed.