RAYMOND ADAMS, *ET AL.*, PLAINTIFFS-RESPONDENTS, v. JERSEY CENTRAL POWER & LIGHT COMPANY, DEFENDANT-APPELLANT.

Argued January 16, 1956—Decided February 20, 1956.

*Mr. Harold A. Price* argued the cause for the appellant (*Messrs. Autenrieth & Rochester,* attorneys; *Mr. Richard B. Thomas, Jr.,* on the brief).

*Mr. Irving Leuchter* argued the cause for the respondents (*Messrs. Kapelsohn, Lerner, Leuchter and Reitman,* attorneys).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal by the defendant-appellant, by leave of the Appellate Division, *R. R.* 2:2–3(*b*), from that portion of an interlocutory order of the Superior Court, Law Division, and judgment entered thereon in favor of 157 of the 161 plaintiffs-respondents herein, on the question of the defendant-appellant's liability only, leaving open the amount of damages for determination by trial. The entry of the order and judgment followed an argument of cross-motions for summary judgment made by the appellant and respondents. We certified the cause here on our own motion under *R. R.* 1:10–2(*d*)(*e*).

The appellant is a New Jersey public utility corporation and on June 3, 1952 was engaged in the manufacture, production and sale of gas and electricity in this State. It was

a subsidiary of the Associated Gas and Electric Company which had been required to dissolve and dispose of certain of its properties by the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935, 15 *U. S. C. A., sec.* 79 *et seq.* The various steps undertaken to carry out that mandate are set forth with particularity in the opinion of the court below. 36 *N. J. Super.* 53.

In compliance with this order the appellant entered into a contract with the New Jersey Natural Gas Company and sold its gas business to that company. Under this agreement all the appellant's employees who were solely engaged in the gas operation were to be given the opportunity to continue their employment with the purchaser, New Jersey Natural Gas Company. Among other things that agreement provided that there shall be "no general assumption by Purchaser of liabilities of any nature whatsoever of Seller." This agreement contained a section dealing specifically with the conditions under which the employees were transferred. This was Article IX, section 1, which provided:

"Section 1. Employees. Seller and Purchaser are desirous that, in the operation of the properties which are the subject of this agreement by Purchaser, Purchaser will endeavor to employ the personnel presently employed by Seller in such operation and Purchaser will endeavor to make due provision therefor. As promptly as practicable Purchaser will advise Seller of any such employees of Seller which Purchaser will be unable thus to employ. Nothing herein set forth shall obligate Seller to release any of its personnel for employment with Purchaser nor to obtain the acceptance, by any of its employees, of employment by Purchaser. Purchaser will give credit under its pension plan to all of Seller's employees transferred to it for all periods of service rendered by such employees to Seller and its predecessors and affiliates as if such service had been rendered to Purchaser, and it is Purchaser's intention that the benefits to be provided under Purchaser's pension plan for the employees thus transferred to it will be substantially comparable to those provided under Seller's pension plan as in force at the date of this agreement."

This cause involves essentially a controversy between the appellant and New Jersey Natural Gas Company as to whether an obligation of severance pay rests upon the appellant or New Jersey Natural Gas Company.

Prior to June 2, 1953 all the employees in the gas division of the appellant were working under a collective bargaining agreement which had certain provisions respecting severance pay depending upon the amount of service with the appellant-company. This contract was entered into on February 11, 1947 and had been renewed year to year up to the day of the sale. These particular provisions are in section 6.6 of the said collective bargaining contract and read as follows:

"Severance pay benefits shall be applied as follows:

Regular Employees who have completed one (1) year or more of continuous service and who are permanently released from employment because of reasons beyond the control of the employees concerned, shall be given an allowance of one (1) week's base pay at the rate of pay at the time of release for each full year of continuous service.

Severance pay benefits shall not apply to employees discharged for just cause, resigning (except for *bona fide* illness in an employee's immediate family requiring a change of location outside the area served by the Company, for reasons of health), retiring, leaving the employ of the Company because of a compensable disability or leave of absence.

The acceptance of a severance allowance shall serve to abolish and annul any and all seniority ratings or reinstatement privileges. Should a separated employee, after having accepted severance pay, as herein provided, be re-employed by the Company, he shall assume the status of a newly hired employee.

Severance benefits shall be in addition to any earned vacation or sick leave benefits for which the separated employee is eligible."

We have carefully examined the contract of sale and we do not find any basis for the assumption that the New Jersey Natural Gas Company has undertaken to fulfill in its entirety the appellant's obligation for severance pay under the terms of the appellant's agreement with its employees.

At the time of the sale the New Jersey Natural Gas Company had a labor agreement with another union. Subsequently an election was held and the International Brotherhood of Electrical Workers, the same union which represented the plaintiffs-respondents under their contract with the appellant, was certified as the bargaining agent for the New Jersey Natural Gas Company employees. A collective bargaining agreement was not entered into until one year after

the certification. This agreement was effective July 1, 1953, and in the meantime the present controversy between the plaintiffs and the appellant concerning their right to severance pay from the appellant developed and this present action was started on December 3, 1952.

This contract, like the contract of sale, makes no provision for severance pay based on prior service with the appellant. In fact section 5 thereof provides "employees who receive pension from another company by reason of previous employment shall be entitled to severance pay from this Company based only upon the period of continuous service with this Company."

The learned trial court concluded that the plaintiffs were permanently released from employment by the appellant; that the sale of the enterprise ended the employment and severed the relationship of master and servant; and that it was merely fortuitous that New Jersey Natural Gas Company was willing to accept the plaintiffs' service and that they could not have continued in the appellant's employ even if they wished. In such case he held there could be no doubt of the right to collect severance pay, unless a further exception was to be judicially written into the contract that its benefits are not available unless actual unemployment and financial loss resulted. This finding is consistent with our holding as to the nature of severance pay provisions as enunciated in the opinion of Mr. Justice Heher for this court in *Owens v. Press Publishing Co.*, 20 *N. J.* 537.

In that case we held that the ultimate purpose of a collective bargaining agreement is a common understanding on the terms and conditions of labor; and, in the quest for the common intention, as with other contracts, the relation of the parties, the attendant circumstances, and the objects they were striving to attain are necessarily to be so regarded. This rule of contract construction is applicable to the severance pay sections of the collective bargaining agreement between the appellant and the plaintiffs' union.

We defined severance pay as in essence a form of compensation for the termination of the employment rela-

tion, for reasons other than the displaced employees' misconduct, primarily to alleviate the consequent need for economic readjustment but also to recompense him for certain losses attributable to the dismissal.

Mr. Justice Heher, speaking for this court, stated:

"Severance pay is terminal compensation measured by the service given during the subsistence of the contract, in this case the collective bargaining agreement, payable on discharge from the employment not induced by misconduct, according to the prescribed formula, a means of recompense for the economic exigencies and privations and detriments resulting from the permanent separation of the employee from service for no fault of his own. In a real sense it is remuneration for the service rendered during the period covered by the agreement. Compare *United States v. Lowden*, 308 *U. S.* 225, 60 *S. Ct.* 248, 84 *L. Ed.* 208 (1939) ; see *Collective Bargaining Contracts* (1941), published by the Bureau of National Affairs, Inc., Washington, D. C. It is not unemployment compensation, which has reference merely to the period of unemployment and the actual wage loss. *Ackerson v. Western Union Telegraph Co.*, *supra* [234 *Minn.* 271, 48 *N. W.* 2d 338, 25 *A. L. R.* 2d 1063] ; *In re Public Ledger*, 161 *F.* 2d 762 (3rd *Cir.* 1947). See also *Hawkins, Dismissal Compensation* (Princeton University Press, 1940), *pp.* 10–13.

\* \* \* \* \* \* \* \*

In short, the separation pay here stipulated was not conditioned upon the employee's discharge from service within the term of the collective agreement. Such qualification of the allowance would run counter to the letter and the manifest reason and spirit of the contract; it would plainly disserve the mutual interests the parties had in view, reasonably deducible from the contract taken as a whole.

Of course, the right to such pay can 'arise' only during the subsistence of the contract so providing, and not after its termination; but once the right thus comes into being it will survive the termination of the agreement. Discharge from service during the term of the contract is not a condition *sine qua non* to the enforcement of the accrued right."

The broad holding in *Owens v. Press Publishing Co., supra,* is dispositive of the appellant's contentions here (1) that it was the intention of the parties in entering into the collective bargaining agreement containing the severance pay provision to provide against "loss of employment" rather than a mere change in the identity of the employer; (2) that in addition to the fact there was no "loss of employment," plaintiffs were never "permanently released from em-

ployment" within the proper meaning of that phrase as used in the collective bargaining agreement between the plaintiffs and the appellant. It likewise disposes of the contention that the holding of the learned trial court below was contrary to the philosophy and purpose of severance pay as generally understood in collective bargaining agreements.

The argument of the appellant is based on the erroneous assumption that the plaintiff-employees remained in continuous employment "without loss." The fact remains their employment with the appellant was terminated and their hiring by New Jersey Natural Gas Company was substantially under different terms which not only did not provide severance pay of the same quality but did not undertake to discharge appellant's obligation of severance pay to the plaintiffs. Certainly there could not be a novation, as the trial court pointed out, without the plaintiffs' consent and to say that severance pay provisions provide only against "loss of employment" rather than a mere change in the identity of the employer is to disregard the words of the contract, for words are symbols of ideas. We cannot ignore the nature and legal consequences of the transfer of the gas operation by the appellant to the New Jersey Natural Gas Company.

The fundamental principles inherent and applicable to severance pay provisions of collective bargaining contracts are as stated in *Owens v. Press Publishing Co., supra.* While such provisions may differ as to circumstances which render the right enforceable, and some may provide that the rights shall cease when the time for pension arrives, or there may be a provision for both or a provision for the surrender of seniority rights where severance pay is provided, it is immaterial under these principles that in a given case there is no loss of employment and no loss of income. If severance pay is intended only to provide for the period of unemployment when the employee is discharged, it would be mere unemployment compensation relating merely to the period of unemployment and the actual wage loss.

It has, as we have said, other objectives, such as the necessity of developing new skills and the readjusting of the

employee's life to altered circumstances. It is not a gratuity but a compensation earned by service, and therefore contributes much to the maintenance of the good will of employees and the community generally.

We find no error in the rejection of parol testimony with respect to discussions that took place prior to the final drafting of the collective bargaining contract, since this proof consists merely of views expressed by those who were participating in the discussions and offers no help in determining what was subsequently agreed on. The proof was clearly inadmissible under *Casriel v. King*, 2 *N. J.* 45 (1949).

We likewise find no merit in the contention that the trial court erred in failing to apply the doctrines of accord and satisfaction, waiver and estoppel. Under the facts and circumstances here the plaintiffs-respondents merely stood upon what they believed to be their legal rights under the contract.

Judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.