

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2006

# WFM Assoc Inc v. Cushman Wakefield

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4744

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"WFM Assoc Inc v. Cushman Wakefield" (2006). *2006 Decisions.* Paper 424.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/424

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4744

WFM ASSOCIATES, INC.

v.

CUSHMAN & WAKEFIELD, INC.,
                                                    Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Civil Action No. 01-cv-00770
(Honorable William J. Martini)

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 11, 2006

Before:  SCIRICA, *Chief Judge*, SLOVITER and BARRY, *Circuit Judges*

(Filed: September 25, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

Cushman & Wakefield, Inc., appeals a jury verdict in favor of WFM Associates,

Inc., in a breach of contract action, and the denial of its motion for judgment as a matter

of law or, in the alternative, a new trial.  We will affirm.

I.

In 1996, WFM and Cushman & Wakefield signed a Purchase and Sale Agreement under which Cushman & Wakefield—a real estate brokerage company—acquired the assets of WFM's administrative services business. WFM promised its best efforts and expertise, as well as those of its president and sole owner, William F. Marcellino, to assist Cushman & Wakefield for a period of five years, when requested, in developing new business and retaining existing business. During that term, WFM was to receive, on a quarterly basis, 10% of the net fees earned and received by Cushman & Wakefield from administrative services[1] contracts with new and most existing clients. A March 25, 1997 memorandum from Cushman & Wakefield's head of asset services, addressed to and initialed by Marcellino, listed "modifications to our existing agreement," and stated net profits generated from service bureau activities[2] would be split evenly between Cushman & Wakefield and Marcellino.

During the term of the contract, WFM contends service bureau contracts and administrative services contracts on which it assisted Cushman & Wakefield were generally profitable. But there were significant problems at one facility where Marcellino served as a consultant to Cushman & Wakefield. Because the Dallas EDS facility was

---

[1] Administrative services activities involve the outsourcing of such tasks as copying services, printing, and records management.

[2] Service bureau activities involve the outsourcing of mail processing and other processing services.

not generating profits on administrative services activities, Cushman & Wakefield hired Ralph Ebert as its new facility manager in 1998, and began performing service bureau activities there. Marcellino was consulted on both decisions. In 1999, Cushman & Wakefield entered into a contract to operate the EDS facility as a joint venture with Interior Systems, Inc., a company in which Marcellino had a 24% ownership stake. As manager, Ebert embezzled approximately $6 million from the EDS facility's United States Postal Service trust account, resulting in Ebert's conviction for mail fraud and the government's bringing a false claim civil action against Cushman & Wakefield, Interior Systems, and Marcellino. The false claim suit ended in settlement. Notwithstanding the problems at the EDS facility, WFM contends it fully performed its obligations to assist Cushman & Wakefield, but Cushman & Wakefield, beginning in June 1998, failed to pay the agreed-upon shares of net fees from administrative services contracts and net profits from service bureau contracts.

WFM sued Cushman & Wakefield for breach of contract in February 2001. WFM contended Cushman & Wakefield failed to pay the agreed-upon shares of net fees and net profits. WFM also contended Cushman & Wakefield failed to provide a full, fair, and accurate accounting of revenues and expenses. Cross-motions for summary judgment were denied, and the case was tried to a jury. Cushman & Wakefield moved in limine to preclude WFM from offering any evidence as to damages after the March 1997 memorandum, on the ground Marcellino, not WFM, was the real party in interest after that date. The District Court denied the motion. The District Court also granted in part

3

WFM's motion in limine to prevent Cushman & Wakefield from presenting the affirmative defenses of recoupment and setoff, ruling that Cushman & Wakefield could not argue setoff or recoupment as to the monies that were the subject of the false claim suit.

The District Court instructed the jury that, "[i]nasmuch as William F. Marcellino is the sole owner of WFM Associates, Inc.," the jury was to "consider William F. Marcellino and WFM Associates as one and the same." Counsel for neither party objected to this instruction. The jury found Cushman & Wakefield had breached its contract with WFM, and awarded compensatory damages to WFM of $335,838.82. Cushman & Wakefield then moved for judgment as a matter of law on the ground there had been no credible evidence of breach or damages, or, in the alternative, for a new trial on the ground the District Court's failure to submit the affirmative defense of recoupment to the jury was prejudicial to Cushman & Wakefield. Cushman & Wakefield appeals the District Court's denial of that motion and the final judgment entered against Cushman & Wakefield.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the denial of a new trial motion for abuse of discretion. *Honeywell, Inc. v. Am. Standards Testing Bureau*, 851 F.2d 652, 655 (3d Cir. 1988). We will affirm the denial of a motion for judgment as a matter of law "unless the record is 'critically absent of that minimum quantity of evidence from which

the jury might reasonably afford relief,'" and regard the evidence in the light most favorable to the non-moving party. *Id.* at 654–55 (quoting *Link v. Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921 (3d Cir. 1986). When reviewing jury verdicts, we "may not redetermine the facts as found by the jury, nor substitute [our] view of the evidence for that of the factfinder." *Franklin Music Co. v. Am. Broadcasting Cos.*, 616 F.2d 528, 534 (3d Cir. 1979). We review the District Court's evidentiary rulings for abuse of discretion. *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 156 (3d Cir. 2002). We review sufficiency of the evidence de novo. *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 311 (3d Cir. 2003) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993)). A jury's damages award will not be upset so long as there exists sufficient evidence on the record that would sustain the award. *W.A. Wright, Inc. v. KDI Sylvan Pools, Inc.*, 746 F.2d 215, 219 (3d Cir. 1984).

## III.

Cushman & Wakefield contends WFM is not the real party in interest in this case, in contravention of Fed. R. Civ. P. 17(a). Cushman & Wakefield contends WFM no longer had any claims against it after March 25, 1997 because the 1997 memorandum "substitute[d]" Marcellino for WFM. Furthermore, it contends there was uncontradicted testimony by Marcellino that Cushman & Wakefield had fulfilled its obligations to WFM under the 1996 contract, so the only viable cause of action remaining was under the 1997 memorandum and belonged to Marcellino individually.

5

To extinguish existing obligations and substitute them with new obligations (imposed on either existing or new parties)[3] through novation, there must be mutual assent. *Adams v. Cent. Jersey Power & Light Co.*, 21 N.J. 8, 15, 120 A.2d 737, 741 (1956); *see also Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1071 (3d Cir. 1979) (stating that novation is "wholly a question of intention"). But as the District Court noted, the 1997 memorandum termed itself a list of "modifications to our existing agreement" and there was evidence Cushman & Wakefield still considered WFM to be contractually bound in December 2000. The District Court did not abuse its discretion in finding the 1997 memorandum was not a novation substituting Marcellino for WFM. Furthermore, the record disproves Cushman & Wakefield's contention it had fulfilled all of its obligations to WFM under the 1996 contract, leaving only obligations to Marcellino under the 1997 memorandum. Marcellino testified on cross-examination that Cushman & Wakefield had ceased making payments to WFM on administrative services contracts in 1998, and had accordingly not fulfilled its contractual obligations to WFM by the time of the 1997 memorandum. The District Court did not abuse its discretion in finding WFM was the real party in interest in accordance with Fed. R. Civ. P. 17(a).

Cushman & Wakefield contends the District Court erred in refusing to submit to the jury a recoupment defense on the monies that were the subject of the false claim suit.

---

[3] Some authorities reserve the term "novation" for instances in which a new party is substituted for an existing one, as Cushman & Wakefield contends is the case here. *See, e.g.*, 13 Arthur L. Corbin, *Corbin on Contracts* § 71.1(2) (rev. ed. 2003) ("The term 'novation' requires the presence of a new party.").

It also contends the jury instruction to consider Marcellino and WFM as "one and the same" rendered the District Court's error on the recoupment defense a prejudicial error. The error was prejudicial, Cushman & Wakefield contends, because it prevented Cushman & Wakefield from arguing it was entitled to a dollar-for-dollar credit against WFM's damages for monies embezzled by Ebert and supposedly received by Marcellino. As the District Court noted, Cushman & Wakefield never pled the affirmative defense of recoupment nor sought to amend its pleadings to include it. Furthermore, the jury was presented with evidence on Marcellino's involvement with Ebert's embezzlement from the EDS facility's trust account. But recoupment is the reduction of a plaintiff's damages because of a demand by the defendant arising out of the same transaction. *Black's Law Dictionary* 1302 (8th ed. 2004). As the District Court noted in its denial of the new trial motion, recoupment is not applicable where, as here, defendant seeks to have plaintiff's claim reduced by damages owed not to defendant, but to the United States government. We see no prejudicial error nor abuse of discretion in denying the new trial motion on the ground a recoupment defense should have been submitted to the jury.[4]

Cushman & Wakefield also contends WFM failed to prove a breach of contract resulting in damages to WFM. We believe there was sufficient evidence to support the judgment. The jury was presented with evidence that Cushman & Wakefield was

---

[4] We need not address the issues of whether Cushman & Wakefield waived the recoupment defense and whether its failure to object to the jury instruction at trial precludes arguing the instruction was erroneous on appeal.

required to make quarterly payments of WFM's separate shares of the net fees from administrative services contracts and net profits from service bureau contracts, and that Cushman & Wakefield failed to make those payments beginning in June 1998. The jury was also presented with evidence that Cushman & Wakefield was required to submit accounting statements to WFM and failed to do so. There was sufficient evidence that Cushman & Wakefield breached the contract and proximately caused damages to WFM.[5]

Cushman & Wakefield also contends WFM's failure to advise Cushman & Wakefield of "profits"—actually funds embezzled by Ebert—accumulating at the EDS facility was a material breach of the implied duty of good faith and fair dealing imposed on parties to a contract by New Jersey law. A material breach by WFM would have relieved Cushman & Wakefield of its further obligations to perform. *Nolan v. Lee Ho*, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990). Under New Jersey law, the essence of the covenant of good faith and fair dealing is that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129, 351 A.2d 349, 352 (1976). Under this standard, Cushman & Wakefield contends Marcellino had a duty to disclose to Cushman & Wakefield the existence of apparent profits earned by the EDS facility after it began operating as a joint venture with Interior Systems, even

---

[5] Because we find on de novo review there was sufficient evidence for the District Court's final judgment, it follows that the District Court did not err in denying Cushman & Wakefield's motion for judgment as a matter of law on this point, a decision reviewed under a more deferential standard.

8

though a Cushman & Wakefield employee, Ebert, was managing the facility at the time. Cushman & Wakefield characterizes Marcellino's actions as deliberate concealment of profits, and contends WFM's conduct caused Cushman & Wakefield to be named in the false claim suit. But, as the District Court noted, there is insufficient evidence to conclude Marcellino had a duty to report to Cushman & Wakefield the profits generated by a Cushman & Wakefield facility manager, or to attribute Ebert's embezzlement to WFM. We conclude there was sufficient evidence of no material breach of the implied covenant of good faith and fair dealing by WFM. The District Court did not err in denying Cushman & Wakefield's motion for judgment as a matter of law.

Finally, Cushman & Wakefield contends WFM failed to prove damages to a reasonable degree of certainty. We believe there was sufficient evidence supporting the jury award of damages. WFM presented specific evidence that it was entitled to $389,453 in damages, and the jury awarded it $335,832.82. Cushman & Wakefield's own Director of Financial Management testified WFM was entitled to $158,614.41 in shares of net fees from administrative services contracts. Cushman & Wakefield contends the EDS facility generated total cash losses of approximately $774,000, nullifying any damages due WFM. But the plain language of the contract between WFM and Cushman & Wakefield does not support the contention that all net fees from administrative services contracts and net profits from service bureau contracts should be aggregated in calculating WFM's total damages. We conclude there was sufficient

9

evidence supporting the damages award, and the District Court did not err in denying the motion for judgment as a matter of law on these grounds.

IV.

We will affirm the District Court's judgment, its denial of the post-trial motions, and the jury award.

10