NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2339-15T3

JACQUELINE R. HERSCH,

 Plaintiff-Respondent,

v.

NATHAN J. HERSCH,

 Defendant-Appellant.
___________________________

 Submitted May 3, 2017 – Decided July 28, 2017

 Before Judges Accurso, Manahan and Lisa.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex
 County, Docket No. FM-07-2100-09.

 Greenbaum, Rowe, Smith & Davis, LLP,
 attorneys for appellant (Andrea J. Sullivan,
 of counsel and on the brief; Stephanie G.
 Reckord, on the brief).

 Wolkstein, Von Ellen & Brown, LLC, attorneys
 for respondent (Marisa Lepore Hovanec, of
 counsel and on the brief).

PER CURIAM

 Defendant Nathan J. Hersch appeals from aspects of three

post-judgment orders compelling him to pay $111,542.38 in

additional alimony and $68,841.25 in additional child support
for the years 2010 through 2013 in accordance with the parties'

marital settlement agreement, awarding plaintiff Jacqueline R.

Hersch $10,000 in counsel fees for defendant's unreasonable and

bad faith behavior in resisting payment, and denying his

requests for a plenary hearing, reconsideration and to modify

his alimony and child support on the basis of changed

circumstances. Because we agree Judge Casale correctly

interpreted the plain language of the parties' agreement, no

evidentiary hearing was required, and the remaining rulings Mr.

Hersch challenges were reasonable and not an abuse of

discretion, we affirm.

 The parties were divorced in 2010 after fifteen years of

marriage and two children, both now teenagers. Mr. Hersch is a

high-earning executive compensation and benefits specialist in

the financial services industry. Although he has been laid off

more than once, the record reveals he has also become re-

employed at the same or higher levels of compensation. Ms.

Hersch is a product manager. She was earning over $80,000 at

the end of the marriage.

 Both parties were represented by counsel in the divorce,

and their marital settlement agreement was the product of

extensive negotiation. It is over thirty pages long and

contains sixty-eight paragraphs, several with subparts. Ten

 2 A-2339-15T3
paragraphs addressing alimony and child support are relevant to

this dispute. They are as follows, with emphasis added.

 Base Child Support

 11. Husband shall pay Wife $16,900 per year
 in base child support for the calendar year
 (or such amount as applicable and adjusted
 for the calendar year in proportion to the
 full calendar year, for example, 3 months
 for 2010) directly to Wife for the two minor
 children, it being understood that such base
 child support shall be paid in equal
 installments of $704.16 due on the first day
 and fifteenth day of each month beginning on
 the first month after the execution of this
 Agreement via either direct deposit or ACH.

 Additional Child Support

 12. Commencing with the entire calendar year
 2010 and continuing thereafter until
 emancipation of the children, Husband shall
 pay additional child support of eight (8%)
 percent from the gross amount of any bonus,
 incentive award, deferred compensation or
 other form of compensation whether in the
 form of forgivable loans, money, stock,
 stock options, stock warrants or otherwise
 when received as cash income to Husband.

 . . . .

 14. Notwithstanding anything to the contrary
 in this Agreement, if Husband receives any
 bonus, incentive awards, deferred
 compensation or other form of compensation
 whether in the form of forgivable loans,
 money, stock, stock options, stock warrants
 or otherwise during the period he is
 obligated to pay child support, but which
 are not received as cash income during such
 period in which he is required to pay child

 3 A-2339-15T3
support, he will be required to pay child
support for such income pursuant to
Paragraph 12 when the bonus, incentive award
or deferred compensation is received as cash
income. By way of example, if Husband
receives a bonus while [the youngest child]
is in his senior year of college which is
not realized as income until the following
year after [the youngest child] has been
emancipated, Husband will still owe Wife
child support on that bonus pursuant to
Paragraph 12. At all times Husband shall
keep Wife advised in writing of the
foregoing forms of compensation, as well as
the statements referred to in preceding
Paragraph 7.

 Base Alimony

26. Husband shall pay Wife base alimony of
$27,000 per year for a period of twelve (12)
years and three (3) months beginning on the
first month after the execution of this
Agreement. Thus, by way of illustration,
but not limitation, if alimony commences on
October 1, 2010, the term for the payment of
alimony shall expire on December 31, 2022.
Base alimony shall be paid in equal
installments of $1,125 on the first day and
fifteen[th] day of each month via either
direct deposit or ACH. Alimony shall be
taxable to Wife and deductible by Husband
under the applicable provisions of the
Internal Revenue Code.

27. Base alimony is based on Husband having
a base salary of $225,000, and Wife having a
base salary of $90,000. In the event
Husband's base compensation exceeds $275,000
or Wife's base compensation exceeds one
hundred forty thousand dollars ($140,000),
such excess for each of them shall be
considered bonus compensation and subject to
paragraph 29. Husband further agrees not to

 4 A-2339-15T3
arrange a compensation package which defeats
the objective of this Agreement.

 Additional Alimony

29. Commencing with the entire calendar year
2010 and continuing thereafter until the
term of alimony expires and subject to above
paragraph 27 hereof, Husband shall pay
additional alimony for each year of the
twelve (12) years and three (3) months for
an amount equal to twenty-five (25%) percent
of the difference between the gross of the
sum-total of (a) his bonuses, incentive
award, deferred compensation or other form
of compensation whether in the form of
money, stock, forgivable loans, stock
options or stock warrants when received as
cash income and (b) Wife's total
compensation bonus, incentive award or other
form of compensation whether in the form of
bonuses, incentive awards, deferred
compensation or other forms of compensation,
whether in the form of money, stock,
forgivable loans, stock options or stock
warrants when received as cash income.
Additional alimony shall be paid to Wife
within seven (7) days after receipt of any
bonus, incentive award, deferred
compensation or other form of compensation
whether in the form of money, stock, stock
options, stock warrants when realized as
cash income by Husband as long as Husband
has already received from Wife her aforesaid
financial information. Thus, by way of
illustration, but not limitation, if the
Wife received a bonus totaling $10,000 and
Husband[] received [a] bonus totaling
$110,000, Wife would receive $25,000 as
"Additional Alimony."

30. The parties agree that the additional
alimony calculation for 2010 will not
include the signing bonus received by
Husband from Capital One in January 2010.

 5 A-2339-15T3
31. Husband shall not pay additional alimony
as described in Paragraph 29 on any of his
adjusted gross earned income as reported on
his federal tax return over and above Five
Hundred Thousand and 00/100 ($500,000.00)
Dollars for a calendar year; provided,
however, the aforesaid Five Hundred Thousand
and 00/100 ($500,000.00) Dollar limitation
shall be increased to Five Hundred Fifty
Thousand and 00/100 ($550,000.00) Dollars on
October 1, 2016.

32. With regard to the payment of
"Additional Alimony," the parties shall
exchange tax information including W-2s,
1099s, K-1s, 1040s, stock awards, stock
options, stock warrant and any other
document reasonably necessary to reflect an
award of compensation, each year within
seven (7) days of receipt of such
information. Husband shall be obligated to
convert all awards, stock, stock options and
stock warrants into cash within one (1) year
of receiving such award unless Wife consents
in writing to a longer period of time. Her
consent shall not be unreasonably withheld.
At all times, Husband must furnish Wife with
written notice of such awards.

 . . . .

35A. Computation and Payment of Additional
Child Support and Additional Alimony. With
regard to the additional child support and
additional alimony to be paid by Husband to
Wife, all calculations as to the amount of
Husband's income will be made on the basis
of what he has to report as earned income
for a given year. However, if awards to
Husband are not in cash but in other forms
of remuneration, for example, stock awards,
stock options and stock warrants, Husband
shall not have to pay such additional child
support or alimony until such stock awards,

 6 A-2339-15T3
 stock options or stock warrants are
 converted into cash in accordance with the
 provisions of this Agreement.

 The divorce judgment was entered in September 2010. Mr.

Hersch was laid off a year later, in September 2011. He

received $364,576.42 in severance pay, $277,000 of which he

received in 2011 and $87,576.42 in 2012. He was re-employed in

January 2012, but was laid off again in October 2013. He

received severance pay of $248,958.31, $68,750 of which was

received in 2013 and $180,208.31 in 2014. Mr. Hersch was re-

employed in January 2014 and laid off a year later in January

2015. He received severance pay of $386,507 in 2015. He was

still unemployed at the time the orders appealed were entered in

late 2015 and January 2016.

 There is no dispute but that Mr. Hersch would owe

additional alimony under the marital settlement agreement if his

severance payments were treated as compensation.1 He argues,

however, that "he considered his severance[] packages as damages

for having been terminated from his position," and that Ms.

1
 Mr. Hersch conceded in the trial court that he owed additional
child support based on his receipt of severance payments
"[b]ecause that's just a flat 8 percent." Accordingly, the
dispute as to whether Mr. Hersch's severance payments are
compensation is limited to the calculation of additional
alimony. Mr. Hersch's objections to the child support award are
based on the calculation discussed infra.

 7 A-2339-15T3
Hersch's view that the severance was compensation represented a

dispute of fact warranting a plenary hearing. Further, he

asserts that "severance payments are not compensation as defined

by New Jersey law." He contends:

 At best, severance pay becomes
 compensation if it replaces compensation
 lost as a result of termination of
 employment. Thus, it is effectively a "rear
 view mirror" or lookback form of payment
 definition.

 To effectuate such a lookback, the
 amount of severance would be divided by the
 amount of compensation to determine, if the
 severance document itself did not, the
 amount of time that severance replaced
 compensation. If, however, the recipient of
 severance, which is, as [Mr. Hersch]
 certified, more in the nature of damages for
 job termination than in the nature of
 compensation, replaced compensation, a payor
 of alimony or child support could not seek
 modification of those payments based on
 changed circumstances because circumstances
 would not have changed by dint of the
 severance.

 The trial judge rejected both arguments, as do we. First,

we reject Mr. Hersch's contention that the parties' differing

interpretations of their marital settlement agreement

necessitated a plenary hearing. Our courts treat marital

settlement agreements as contracts and interpret them

accordingly. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007).

 8 A-2339-15T3
 "[T]he judicial interpretive function is to consider what

was written in the context of the circumstances under which it

was written, and accord to the language a rational meaning in

keeping with the expressed general purpose." Owens v. Press

Publ'g Co., 20 N.J. 537, 543 (1956). "Where the 'principal

purpose' of the parties is found, 'further interpretation of the

words of contract should be such as to attain that purpose, if

reasonably possible.'" Ibid. (quoting Corbin on Contracts, §

545). Construction of contract language is generally a question

of law unless its meaning is unclear and turns on conflicting

testimony. Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J.

Super. 78, 92 (App. Div. 2001).

 As Judge Casale reasoned:

 [W]hen you look at the plain language
 of the marital settlement agreement, the
 severance pay would have to be included as
 income for purposes of the alimony,
 additional alimony calculation. The
 language is extremely broad. The only thing
 it excluded was the signing bonus. I also
 think that under any reading of I.R.S.
 regulations, that the severance pay was
 meant and is replacement income.

 And I don't buy the Defendant's version
 that it's a release of a specific damage
 claim. It's severance pay for employment.
 It's includable as wages. And it's
 includable as income under any reading of
 the I.R.S. regulations here. Therefore, I
 find that it should be included within the
 additional alimony calculation.

 9 A-2339-15T3
 . . . .

 And when I read the marital settlement
 agreement, it's broad. It was negotiated to
 try to prevent the Defendant from
 manipulating his income into other forms of
 unearned income. The Defendant's argument
 that unemployment income is earned income,
 but the severance pay is not does not carry
 weight with this Court.

 Here, as the trial judge found, the language of the

parties' settlement agreement is clear and its intent

unambiguous, making a plenary hearing unnecessary. See Segal v.

Lynch, 211 N.J. 230, 264-65 (2012) ("[A] plenary hearing is only

required if there is a genuine, material and legitimate factual

dispute."). By its express terms, Mr. Hersch's obligation to

pay additional alimony (as well as additional child support) is

calculated based on "what he has to report as earned income for

a given year." The agreement obligates him to pay additional

alimony based on the amount of his "adjusted gross earned income

as reported on his federal tax return," between $275,000 and

$500,000. His severance pay is indisputably reportable as

earned income on his federal tax return. See 26 U.S.C. §

3401(a) (defining wages); 26 C.F.R. § 31.3401(a)-1(b)(4) (noting

"[a]ny payments made by an employer to an employee on account of

dismissal, that is, involuntary separation from the service of

the employer, constitute wages regardless of whether the

 10 A-2339-15T3
employer is legally bound by contract, statute, or otherwise to

make such payments"); 26 U.S.C. § 61(a) and 26 C.F.R. § 1.61-

2(a)(1) (treating severance pay in the same manner as salary and

wages for federal income tax and withholding purposes); Meehan

v. Comm'r, 122 T.C. 396 (2004) (treating severance pay as salary

and wages for purposes of IRS continuing wage levy). Moreover,

Mr. Hersch reported his severance payments and included them on

his federal tax returns on line #7, "Wages, salaries, tips,

etc."

 Further, no case supports Mr. Hersch's novel view that

under New Jersey law "the amount of severance [is to] be divided

by the amount of compensation to determine, if the severance

document itself did not, the amount of time that severance

replaced compensation."2 New Jersey treats severance as does the

federal government, as a form of wages. Owens, supra, 20 N.J.

2
 The only case Mr. Hersch cites in support of this theory,
Reinbold v. Reinbold, 311 N.J. Super. 460 (App. Div. 1998), he
concedes is "not precisely analogous." The question presented
in that case was whether an early retirement incentive offered
after the complaint for divorce was filed but earned during the
marriage as a reward for service, was "includable in the pot for
equitable distribution." Id. at 472. We held that it was,
distinguishing it from the defendant's severance pay, which was
intended as "the replacement for future earnings component of
defendant's benefit," and like all future earnings "is not
subject to equitable distribution." Id. at 471. Far from
supporting Mr. Hersch's position, the case is consistent with
both New Jersey and federal law that severance pay is a form of
wages.

 11 A-2339-15T3
at 545-46 (characterizing severance pay as "terminal

compensation[,] . . . a means of recompense for the economic

exigencies and privations and detriments resulting from the

permanent separation of the employee from service for no fault

of his own").

 Our Supreme Court long ago rejected the theory that

"severance pay is intended only to provide for the period of

unemployment when the employee is discharged." See Adams v.

Jersey Cent. Power & Light Co., 21 N.J. 8, 15 (1956). Were that

the case, the Court reasoned, "it would be mere unemployment

compensation relating merely to the period of unemployment and

the actual wage loss." Ibid. Instead, the Court determined

that severance pay had "other objectives," including "the

readjusting of the employee's life to altered circumstances.

It is not a gratuity but a compensation earned by service." Id.

at 15-16. Accordingly, we find no support for Mr. Hersch's

argument that severance payments are not considered compensation

under our law.

 The obvious purpose of the parties' marital settlement

agreement was to adjust alimony in response to an increase in

compensation by either party, regardless of how that

compensation might be characterized, except when specifically

excluded, such as in the case of Mr. Hersch's 2010 signing

 12 A-2339-15T3
bonus. Considering "what was written" in the agreement, "in the

context of the circumstances under which it was written," and

according the words "a rational meaning in keeping with the

expressed general purpose," Owens, supra, 20 N.J. at 543, we

have no hesitation in concluding, as did the trial court, that

Mr. Hersch's severance payments were properly included as earned

income for purposes of calculating additional alimony.

 Applying those same interpretive principles, we similarly

dispose of Mr. Hersch's argument that the amounts for additional

child support in the order were incorrectly calculated. Mr.

Hersch contends the court "failed to properly shift alimony paid

to [Ms. Hersch] from [Mr. Hersch's] income and add it to her

income before analyzing additional child support," as called for

in the Child Support Guidelines. This is, however, not a

Guidelines case. See Caplan v. Caplan, 182 N.J. 250, 264-66

(2005); see also Child Support Guidelines, Pressler & Verniero,

Current N.J. Court Rules, Appendix IX-A, ¶ 20 to R. 5:6A at

www.gannlaw.com (2017).

 There is nothing in the parties' detailed agreement that

suggests they intended that alimony paid to Ms. Hersch should be

deducted from Mr. Hersch's income before calculating any

additional child support due. Although the parties in several

places in their marital settlement agreement used hypothetical

 13 A-2339-15T3
examples to demonstrate how a particular calculation was to be

computed, they did not do so in the case of additional child

support. Instead, the agreement provides simply that "Husband

shall pay additional child support of eight (8%) percent from

the gross amount of any bonus, incentive award, deferred

compensation or other form of compensation whether in the form

of forgivable loans, money, stock, stock options, stock warrants

or otherwise when received as cash income to Husband." Because

the language is clear that the eight percent is on "the gross

amount" of any compensation, we reject his effort to make a more

favorable agreement for himself than the one he negotiated.3 See

Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999)

(noting "it is not the function of the court to make a better

contract for the parties, or to supply terms that have not been

agreed upon").

 Judge Casale's decision to deny Mr. Hersch's application to

modify his base alimony and child support obligations is

3
 Mr. Hersch does not explain how the court "ignored the [marital
settlement agreement's] express limitation that only [Mr.
Hersch's] income between $275,000 and $500,000 was to be
considered" in calculating additional alimony, and the alleged
error is not obvious to us. We thus do not address it. See 700
Highway 33 LLC v. Pollio, 421 N.J. Super. 231, 238 (App. Div.
2011) (noting the failure to adequately brief an issue permits
the court to treat it as waived).

 14 A-2339-15T3
supported by adequate, substantial and credible evidence in the

record and thus will not be disturbed on appeal. See N.J.S.A.

2A:34-23; Lepis v. Lepis, 83 N.J. 139, 145 (1980); Storey v.

Storey, 373 N.J. Super. 464, 470 (App. Div. 2004). Mr. Hersch

was separated from his most recent employment in January 2015,

ten months before he applied to modify his support obligations.

In addition to his demonstrated ability to find re-employment in

similar situations in the recent past, the record reveals Mr.

Hersch received gross pay of $426,956.04 in the first two months

of 2015 and anticipated income in a new venture of $200,000 in

2016. Given that his base alimony obligations were premised on

income of $225,000, and that his gross income in the years since

the divorce had ranged from a low of $330,000 to a high of

$695,000, we cannot find the court erred in finding he had not

met his burden of proving changed circumstances of a permanent

nature.

 We likewise find no error in Judge Casale's orders setting

a schedule for payment of arrears and awarding Ms. Hersch

$10,000 in counsel fees; decisions that are likewise committed

to the Family Part judge's sound discretion. See Eaton v. Grau,

368 N.J. Super. 215, 225 (App. Div. 2004) (counsel fees);

Mastropole v. Mastropole, 181 N.J. Super. 130, 141 (App. Div.

1981) (arrearages). Judge Casale initially ordered Mr. Hersch

 15 A-2339-15T3
to pay only $400 per month toward his support arrears of

$180,383.60. Following review of the parties' updated case

information statements, which for Mr. Hersch revealed gross

assets of over $2,000,000, almost twice Ms. Hersch's gross

assets,4 and 2015 income of over $400,000, the judge ordered Mr.

Hersch to pay down his arrears by $100,000 within ten months in

$20,000 increments.

 We perceive no error in that ruling or in the court's

decision to award Ms. Hersch fees on the motions. The court's

findings, that Mr. Hersch obfuscated and delayed providing a

true picture of his finances, are amply supported in the record.

The trial judge considered the relevant factors contained in

Rule 5:3-5(c). The fee award, which was approximately half of

the fees requested, was in accord with both the Rule and the

parties' agreement5 and well within the court's considerable

discretion. See Tannen v. Tannen, 416 N.J. Super. 248, 285

(App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011).

4
 The case information statements also revealed a significant
disparity in the parties' net assets.
5
 Paragraph sixty-four of the marital settlement agreement
provides the party defaulting in performing any obligation shall
pay the prevailing party's fees in any action to enforce.

 16 A-2339-15T3
 In sum, we affirm the trial court's orders of August 27,

2015, October 30, 2015 and January 29, 2016.

 Affirmed.

 17 A-2339-15T3